IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | Case No. 8:09CR406 |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | |
| ) | FINDINGS AND |
| PAUL LEFFLER,  ) | RECOMMENDATION |
| ) | |
| Defendant.  ) | |

This case is before the court on the Defendant's Motion to Suppress (#15).  Hearing on the motion was held January 20, 2010 and the Transcript of the hearing (#28) was filed January 27, 2010 at which time the motion was deemed submitted.

Paul Leffler moves the court for suppression of evidence seized from his vehicle during his September 2, 2009 contact with law enforcement.  Specifically, Leffler alleges that the seizure of his person and vehicle occurred absent a warrant and absent any circumstances justifying a warrantless search, all in violation of his Fourth Amendment rights.  The government counters that the search was permissible under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), and *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469 (1983).

**FACTUAL BACKGROUND**

James Butts testified that on September 2, 2009 he was working in his capacity as an officer of the Fremont police department.  At approximately 4 P.M. he attended a shift briefing where he was made aware that the department's pass-along book contained an entry[1] by Officer Velasquez that Velasquez was looking for Paul D. Leffler.  The entry specified that caution should be used if Leffler was contacted, as he is said to be in

---

[1] Exhibit 1, copy of the Velasquez pass-along book entry.

possession of two firearms.  The entry also listed two vehicles registered to Leffler, one of which was a 1969 blue Chevrolet pickup plated Nebraska 05 Commercial 2814.  Velasquez's entry in the pass-along book was dated August 31, 2009.

Butts testified that at approximately 8:26 P.M. that same day, he received a call to report to the WalMart Store in Fremont because police dispatch had received a 911 hang-up from a pay phone located inside the store (7:12-23).  Butts proceeded to the WalMart Store where he parked his patrol car directly in front of the building.  He observed a 1969 blue Chevy belonging to Mr. Leffler, driving through the parking lot.  As he watched the vehicle, he identified a female sitting in the middle bench seat as a person he knew from previous contacts who had been arrested for shoplifting at WalMart.  Butts was aware that anytime WalMart catches a shoplifter, that person is banned from WalMart's premises for life (8:1-12).

Butts entered the store to check out the initial call and found that there were no problems inside the WalMart Store.  Butts went back to the front of the store and called his on-duty sergeant to advise him that he had seen Leffler, another male, and a female driving through the parking lot.  Butts walked to the west of the building and then to the north where he observed Leffler's vehicle backed into a stall.  Butts observed Leffler outside of the vehicle rubbing some type of compound on the hood and the female still sitting inside of the pickup (9:2-7).  Butts then observed another individual walking near him, and Butts asked him who he was and what he was doing.  The individual advised Butts that he was going to meet his ride, who was Leffler.  Butts asked the individual to stay beside him while Butts approached the Leffler vehicle.  As Butts approached, Leffler was still in front of his vehicle and the woman, later identified as Faith Christofferson was

-2-

still sitting inside the pickup.  As Butts walked toward the pickup, the WalMart loss prevention officer came out of the building and approached and showed Butts a copy of the trespass ban[2] involving Christofferson issued as a result of a previous arrest for shoplifting.  Upon reviewing the ban-for-life notice, Butts realized that he had covered that event as a police officer and had previously interviewed Miss Christofferson.  While Christofferson was still in the pickup, on a couple of occasions Butts had to ask her to keep her hands where he could see them, as she was bending over and appeared to be reaching under the seat or onto the floorboard (12:3-10).  At one point, Christofferson attempted to get out of the vehicle and Butts advised her to sit still as he was by himself and with his information that weapons may be present, he was concerned for his safety and wanted everyone where he could see them.

The WalMart prevention officer advised Butts that he wanted Christofferson prosecuted.  Butts then had her step out of the vehicle where she was placed in handcuffs and advised she was under arrest for trespassing.  Butts immediately searched Christofferson, but did not find anything on her.  After searching Christofferson he looked inside the vehicle where she had been seated and the area where she had been motioning with her hands.  Butts observed a camera case laying on the floorboard.  Butts described the camera case as approximately 3 inches by 2 inches (13:1-6).  Butts then opened the case to make sure there were no weapons in it.  He observed a clear plastic bag containing a white crystal-like substance.  Leffler was then placed under arrest and transported to the Fremont police department.

---

[2] Exhibit 2, WalMart ban-for-life notice dated June 10, 2009.

On cross-examination Butts testified that at the time Christofferson was removed from the pickup truck, he did not know if Leffler was still in front of his pickup truck as another officer was dealing with Leffler (16:10-18). Butts admitted that until the time he found the controlled substance inside the camera case, he had not observed any criminal activity by Leffler (17:13-17).

## LEGAL ANALYSIS

### A. Initial Encounters with Leffler and Christofferson.

Encounters between the police and citizens fall into three general categories: (1) consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment, *see, e.g., Florida v. Bostick*, 501 U.S. 429 (1991); *Florida v. Royer*, 460 U.S. 491 (1983); (2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, *see, e.g., Terry v. Ohio*, 392 U.S. 1 (1968); *Reid v. Georgia,* 448 U.S. 438 (1980); *United States v. Sokolow*, 490 U.S. 1 (1989); and (3) physical arrests, which must be supported by probable cause. *See generally United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir.), *cert. denied*, 540 U.S. 962 (2003).

I find that Officer Butts' initial contact with Christofferson, which occurred after Butts received the life-ban notice and the request from the WalMart loss prevention officer that Christofferson be cited for trespassing was, at the minimum, an investigative detention supported by a reasonable articulable suspicion of criminal activity.

The record is unclear as to law enforcement's initial contact with Leffer. The record notes Leffler was present outside of his vehicle, but is silent as to the specifics of his

interaction with officers. The issue in this case, however, is not impacted or resolved by law enforcement's interaction with Leffler but, rather, by their interaction with Christofferson. I find that because Butts had, at the minimum, a reasonable and articulable suspicion that Christofferson was involved in the criminal activity of trespass, he properly seized her and searched her and that such activity was of limited scope and duration and did not violate her Fourth Amendment rights. In any event, Christofferson's Fourth Amendment rights are personal rights that may not be asserted vicariously by Leffler. *See United States v. Barragan*, 379 F.3d 524 (8th Cir. 2004).

### B. Seizure of the Camera Case.

Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent. *Horton v. California*, 496 U.S. 128, 136-37 (1990). The first requirement, that the objects be in plain view, "is often considered an exception to the general rule that warrantless searches are presumptively unreasonable ...." *Id.* at 133-34. The third requirement, that the incriminating character of an item be immediately apparent, is satisfied when police have "probable cause to associate the property with criminal activity." *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001) (internal quotation marks omitted). Probable cause is required to justify the seizure of an item that police observe in plain view. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987). Ultimately, the standard by which a warrantless search and seizure is reviewed under the Fourth Amendment is reasonableness. *Id.*

The government argues that the seizure and search of the camera case was justified under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), and *Michigan v. Long*, *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469 (1983). *Gant* requires that officers demonstrate a threat to their safety, or a need to preserve evidence, in order to justify a warrantless search. Here, the crime involving Christofferson was trespass, and there was no need to preserve evidence. Thus, the government must rely on the officer's-safety prong.

The same analysis is true under *Long*, wherein the protective search of a passenger compartment of the defendant's vehicle was found to be reasonable under the principles articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). A protective search is justified where the police have a reasonable belief that the suspect poses a danger.

The problem, however, for the government in this case, whether analyzed under *Gant* or *Long*, is that the search must be limited to those areas in which a weapon may be placed or hidden. Here, the officers' stated concern was a firearm or the two firearms mentioned in Officer Velasquez's pass-along book information. It is not logical or reasonable to believe that a firearm was hidden within a 2-inch by 3-inch camera case. Nor was the incriminating character of the camera case immediately apparent.

I find that the government has not met its burden of proof justifying an exception for a warrantless search. I find the search of the camera case found in Leffler's vehicle to be a violation of Leffler's Fourth Amendment rights.

For these reasons,

**IT IS RECOMMENDED** that the defendant's Motion to Suppress (#15) be granted and the contents of the camera case suppressed, as it was seized and searched in violation of Leffler's Fourth Amendment rights.

A party may object to the magistrate judge's findings and recommendation by filing an "Objection to Magistrate Judge's Findings and Recommendation" within 14 days after being served with the findings and recommendation. The objecting party must comply with all requirements of NECrimR 59.2.

**DATED February 4, 2010.**

> **BY THE COURT:**
>
> **s/ F.A. Gossett**
> **United States Magistrate Judge**